UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

REMOVABLE MEDIA SOLUTIONS, INC.,

                      NO. CIV. S-08-3084 LKK/GGH

      Plaintiff,

  v.

                      O R D E R

AAR MOBILITY SYSTEMS, INC., GREG SCHELLHASE, DOES 1-100 and CORPORATION A-Z, inclusive,

      Defendants.

_____/

    This case is before the court on diversity jurisdiction. Plaintiff Removable Media Solutions, Inc. ("RMSI") previously sought to sell a telecommunications device to the California National Guard. RMSI sought the assistance of defendant AAR Manufacturing, Inc., ("AAR") in this endeavor. The California National Guard eventually elected to retain the services of AAR but not RMSI in producing the device, and AAR subsequently sold similar devices to other states.

    RMSI's surviving claims allege that AAR thereby breached "non-

1

circumvent" and "non-disclosure" agreements.  AAR seeks summary judgment on both claims.[1]  For the reasons stated below, the court grants AAR's motion as to the non-circumvent agreement but denies the motion as to the non-disclosure agreement.

## I. Background[2]

In 2003, RMSI entered an agreement with the California National Guard wherein RMSI would develop a device to provide "wireless communications access for persons located at an incident or emergency site to their appropriate command center."  The parties refer to this as a "RATT box," without explaining what RATT stands for.  RMSI did not invent the concept underlying the RATT box and such a device could be built with other companies' technology, but RMSI offered a cheaper solution than those available from other providers.

After this initial agreement, it was decided that the RATT box should be truck mounted.  To assist in this endeavor, RMSI contacted AAR as a potential provider of shelters into which the RATT box could be built.  The two companies entered into an agreement.  In connection therewith, AAR signed separate "noncircumvent" and "nondisclosure" agreements in April of 2004.

---

[1] RMSI's complaint also enumerates claims for misappropriation of trade secrets under Cal. Civ. Code § 3426.1(d) and for breach of other unspecified contracts.  RMSI explicitly states its non-opposition to AAR's motion for summary judgment as to these claims.

[2] The facts provided in this section are undisputed, with one exception stated below.  Unless another citation is given, quoted language is taken the parties' statements of undisputed facts and has been specifically affirmed by the other party.

2

Under the noncircumvent agreement, the parties agreed to:

> refrain from either directly or indirectly soliciting business and contracts from sources not their own which have been made available to them through this agreement, without the express permission of the Party who made the original introduction. In addition, all Parties to this Agreement . . . will maintain complete confidentiality regarding business sources and will only disclose such business sources under mutual Agreement and only after written permission has been received from the originator of the source.

Decl. of Hans. U. Stucki in Supp. of Def.'s Mot. Summ. J., Ex. D. Under the nondisclosure agreement, AAR agreed, inter alia, "not to use any Confidential Information disclosed to it by [RMSI] for [AAR's] own use or for any purpose other than to carry out discussions with [RMSI] concerning, and the undertaking of the Relationship." Id. Ex. E. After these agreements were executed, work on the project moved ahead with AAR as a "participant and shelter provider." Throughout this time, the California National Guard's primary contact regarding the project was RMSI.

On September 2, 2004, David Golden, the project manager for the California National Guard, sent an email to the parties stating that the California National Guard wished AAR to serve in the role of "[s]helter config [sic] and project management." AAR had not directly or indirectly "solicited" this role. Nonetheless, AAR agreed to so serve. "RMSI's role [was] diminished to the surveillance function only. RMSI had not agreed to, and was unhappy about[,] its diminished role."

On September 20, 2004, Golden sent an email to RMSI inquiring

3

whether RMSI wished to remain associated with the project. The motives underlying this email are disputed, but neither party argues that these motives are relevant to the present motion.

Finally, on September 29, 2004, Golden "directed AAR to discontinue use of RMSI from any future projects," after which "AAR continued with the project as [p]roject manager, working directly with" the California National Guard. "While AAR did not have knowledge of the basis for this decision, it agreed to discontinue use of RMSI and carried out the direction from" the California National Guard. AAR did not discuss with RMSI whether, in doing this, AAR breached the non-disclosure and non-circumvent agreements. Nonetheless, Tom Luisi, on behalf of RMSI, informed AAR that he believed that AAR's actions breached the agreements.

AAR build and sold sixteen RATT box units. Eight of these were sold to the California National Guard. Of the remaining eight, two were sold "to the Georgia National Guard through [the California National Guard]," two to the Montana National Guard and four to the Illinois National Guard.

**II. Standard for Summary Judgment under Fed. R. Civ. P. 56**

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995). Under summary judgment practice, the moving party

////

4

>  always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986); see also First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Secor Ltd., 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); see also First Nat'l Bank, 391 U.S. at 289. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. Matsushita, 475 U.S. at 587-88 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); County of Tuolumme v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001). Nevertheless, it is the opposing party's obligation to produce a factual predicate as a basis for such inferences. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some

1  metaphysical doubt as to the material facts . . . . Where the
2  record taken as a whole could not lead a rational trier of fact to
3  find for the nonmoving party, there is no 'genuine issue for
4  trial.'"  Matsushita, 475 U.S. at 586-87 (citations omitted).

### III. Analysis

**A.   Breach of The Non-circumvent Agreement**

AAR argues that it is entitled to summary judgment on this claim because RMSI has provided no facts in support thereof and alternatively because this agreement is rendered unenforceable by Cal. Bus. and Prof. Code § 16600.  RMSI's opposition memorandum challenges solely the latter ground, but the former provides an adequate basis for granting summary judgment.

Under California law, a claim for breach of contract includes four elements: that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant breached those contractual duties, and that plaintiff's damages were a result of the breach. Reichert v. General Ins. Co., 68 Cal. 2d 822, 830 (1968); First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).

Here, RMSI has not provided evidence indicating that AAR breached the non-circumvent agreement.  It appears that two of the agreement's prohibitions are potentially applicable.  First, the agreement prohibits the parties from "soliciting business and contracts from sources not their own which have been made available to them through this agreement, without the express permission of the Party who made the original introduction."  At oral argument,

6

1  RMSI argued that AAR's acceptance of the California National
2  Guard's propositions constituted solicitation of business with the
3  National Guard.  The court cannot agree.  Under California law,
4  interpretation of a written contract's terms is a question of law
5  for the court, which the court may ordinarily decide on summary
6  judgment.  <u>Waller v. Truck Ins. Exchange</u>, 11 Cal. 4th 1, 18 (1995),
7  1 Witkin, Summary 10th Contracts § 741 (2005).  Courts normally
8  interpret terms in accordance with "plain meaning or the meaning a
9  layperson would ordinarily attach . . . ."  <u>Waller</u>, 11 Ca. 4th at
10 18.  The plain meaning of "solicit" requires proactive seeking out.
11 Merriam-Webster's Online Dictionary (2010) (retrieved July 26,
12 2010, from http://www.merriam-webster.com/dictionary/solicit),
13 Black's Law Dictionary 1427 (8th Ed. 2004).  RMSI agrees that AAR
14 did not request or initiate its involvement with the California
15 National Guard directly or indirectly.  Pl.'s Response to Def.'s
16 SUF #16.  As to other states' national guards, regardless of
17 whether AAR solicited the sales, RMSI has not argued that these
18 other entities were sources "made available to [AAR] through" the
19 parties' agreement, nor has RMSI offered any evidence on this
20 issue.  Thus, there is no evidence that AAR breached this term of
21 the agreement.

22     Second, the agreement obliged AAR to "maintain complete
23 confidentiality regarding business sources."  Again, RMSI offers
24 neither argument nor evidence of a breach of this term.

25     Because RMSI would bear the burdens of proof and production on
26 the question of breach at trial, RMSI's failure to provide evidence

7

on this question entitles AAR to summary judgment on this claim.

**B.   Breach of the Non-disclosure Agreement**

The other remaining claim is for breach of the non-disclosure agreement. AAR's sole argument for summary judgment on this claim is that it is preempted by the Uniform Trade Secrets Act, as adopted by California, and in particular by Cal. Civ. Code § 3426.7.[3] In pertinent part, this statute provides that:

> (a) Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.
>
> (b) This title does not affect
>
> (1) contractual remedies, whether or not based upon misappropriation of a trade secret,
> (2) other civil remedies that are not based upon misappropriation of a trade secret, or
> (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Undaunted by the statute's explicit statement that it does not affect contractual remedies, AAR argues that the statute preempts the claim for breach of the non-disclosure agreement. This assault on the plain language of the statute fails.

Courts have held that except for the three exemptions noted in

---

[3] At oral argument, AAR asserted in passing that summary judgment was also appropriate as to this claim because RMSI had failed to provide evidence in support thereof. This argument was not made in AAR's moving papers--AAR conspicuously argued only that the breach of non-circumvent agreement claim was without evidentiary support. Accordingly, the court does not consider this argument here.

8

subsection (b), the statute implicitly "preempts common law claims that are based on misappropriation of a trade secret." Ali v. Fasteners for Retail, Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008) (internal quotation marks omitted); see also K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc., 171 Cal. App. 4th 939, 954 (2009), Accuimage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 954 (N.D. Cal. 2003) (holding that this interpretation was implied by Cadence Design Systems, Inc. v. Avant! Corp., 29 Cal.4th 215, 224 (2002)).

AAR's argument that this implicit preemption extends to contract claims invokes a gross misreading of the caselaw. AAR quotes the statement from Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025 (N.D. Cal. 2005) that "all state law claims based on the same nucleus of facts as the trade secrets claim are preempted under California's UTSA." Id. at 1034.[4] AAR argues that notwithstanding the statute's explicit saving of contract claims, courts have stated that "common law claims" arising out of the same operative facts as a trade secret claims are preempted, and that contract claims are common law claims, so contract claims must be preempted.

To the extent that Digital Envoy held that "all claims" are preempted, it plainly referred to "all claims" argued to be preempted in that case, i.e., claims for unfair competition and

---

[4] The court observes that this precise statement is not part of the holding in Digital Envoy, but instead a summary of Callaway Golf Co. v. Dunlop Slazenger Group Am., Inc., 318 F. Supp. 2d 216, 219 (D. Del. 2004).

9

unjust enrichment.  Id. at 1035 ("California's statute . . . preempts Digital's claims for unfair competition and unjust enrichment.").  Digital Envoy and other cases have explicitly recognized that § 3426.7 does not preempt contract claims.  Id. (§ 3426.7 "explicitly states that claims based upon breach of contract . . . are not preempted by the statute."); see also First Advantage Background Servs. Corp. v. Private Eyes, Inc., 569 F. Supp. 2d 929, 936 (N.D. Cal. 2008), HiRel Connectors, Inc. v. United States, No. CV 01-11069, 2006 U.S. Dist. LEXIS 93332 (C.D. Cal. July 18, 2006) ("Plaintiff's claim for breach of contract is not preempted by California's Uniform Trade Secrets Act.").  While few California courts have spoken to the scope of this statute, at least one state court has allowed a claim for breach of a non-disclosure agreement to proceed in parallel with a claim for misappropriation of trade secrets.  Glue-Fold, Inc. v. Slautterback Corp., 82 Cal. App. 4th 1018, 1021 (2000).  Although Glue-Fold did not discuss possible preemption of the contract claim, this may well be because the issue was so clear as to require no discussion.

Although this conclusion should be obvious, the court has exhaustively searched cases citing § 3426.7, finding no cases providing even implicit support for AAR's theory.  AAR's motion is therefore denied as to this claim.

### IV. Conclusion

For the reasons stated above, defendant AAR's motion for summary judgment (Dkt. No. 20) is GRANTED IN PART.  The court GRANTS summary adjudication to defendant as to the first and third

10

1 claims enumerated in plaintiff's complaint, and as to plaintiff's
2 second claim insofar as that claim is predicated on breach of the
3 non-circumvent agreement.  The court DENIES defendant's motion as
4 to plaintiff's second claim insofar as that claim is predicated on
5 breach of the non-disclosure agreement.
6     IT IS SO ORDERED.
7     DATED:  July 28, 2010.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

11